Good morning, your honors. May it please the court, Scott Karen on behalf of the appellants and defendants in this case. Before I begin, I just want to express my thanks to the court for changing the oral argument today so I could attend a family function yesterday. Much appreciated, so thank you. I want to start by addressing the issue that I think should be dispositive of all three claims of immunity that we've raised on appeal. And that is the question of whether the sheriff or his personnel knew or should have known that the plaintiff was entitled to release. That, of course, is the standard under the 14th amendment. It's relevant to Sheriff Baca's qualified immunity claim. It's also very similar to the standards under state law immunity and that we've urged for quasi-judicial immunity in this case, this concept of reasonableness. You're representing all the parties? Yes, your honor. Sheriff Baca, former Sheriff Baca, the County of Los Angeles, and the Sheriff's And it doesn't matter to your discussion whether there is any immunity available to the sheriff. You're talking in individual capacity now, is that right? Yes, that's correct. As far as qualified immunity is concerned, obviously it's only in his individual capacity. As far as state law immunity is concerned, we believe that applies both to the individual and to the official capacity claims and to the entities as well. And we've urged that it's possible that quasi-judicial immunity could apply to the entities, although I recognize that's not our strongest point, so I'm not going to push that too far. We don't believe that the complaint satisfies the standard of knew or should have known. The complaint alleges five discrepancies between the plaintiff's description and the description of the warrant subject. The plaintiff claims he had a different middle name, different CII number, different of those discrepancies are not relevant to the analysis because those discrepancies were not apparent on the face of the warrant. My understanding is, and I really want clarification from Mr. Garcia's lawyer on this, is that his response to that is likely to be, well, that's the problem. In other words, that it should have been. There should have been more specification on the warrant. Right, and that's an issue that was addressed in the district court and it was, we brought a motion to dismiss on grounds that the warrant did satisfy particularity, that motion, it was granted on those grounds. No, if it's a particularity question exactly. It's simply a question of preventing this exact problem. Yeah. Relatively simply. I understand your point, yeah. Had more information been included on the warrant and that was the argument that Mr. Garcia raised in the district court. Would Mr. Baca have any role in that? Does he have anything to do with what goes on a warrant? The Sheriff's Department actually does not have anything to do with what goes on the warrant. The warrants are issued by the court and my understanding is that the courts rely on information that's provided to them by the district attorney's office, identifying information, and that the courts don't really look at criminal history information, that sort of thing. But the Sheriff's Department doesn't play a role in, in other words, there's no communication between the department and the court. When the court is entering information on a warrant. We therefore take the warrant as it actually exists. Right. Right. Counsel, Counsel Judge Gould, if I can interject a question there. In terms of the county's procedures, if they come up with a warrant, then on the warrant there's the same name as that of someone they've got there. Is there any procedure, standard procedure, on inquiries that should be made? If, you're saying if there's a warrant, they find a hit on a warrant for somebody and it appears to be... They get a warrant that has the same name as someone they've gotten detention. Right. I would suggest, well first of all, if the only match is on name, and none of the other descriptors match the individual that they have in custody, I would suggest that that would, that would be a different scenario than what we have here. It would be, that would not be a reasonable match. Hey look, you've got name and birth date, I think, Badger. But is there any procedure for, whereby they would have to find out what's the middle initial of the, of the name of the guy in the warrant? Yeah, I understand your question now. Yes, there is. In fact, the Sheriff's Department has a policy that actually goes above and beyond the constitutional standard. The Sheriff's Department policy is anytime someone complains, Sheriff's Department, it says, I'm not the subject of this warrant that I'm being detained on. Sheriff's Department policy is to, anytime someone complains, to investigate and to determine whether or not that person is, in fact, the subject of the warrant. And that's, and that's a policy that goes above and beyond the constitutional standard, because under the 14th Amendment, an investigation is not necessarily called for anytime someone complains that he's not the subject of the warrant. The constitutional standard is, if he complains that he's not the subject of the warrant, but he reasonably matches the warrant, then no investigation is required. But the Sheriff does have a policy that goes above and beyond that, and requires an investigation every time. What about the fact that in this instance, there was almost a foot difference in the height of the person? Yeah, I agree, Your Honor, that is a material difference. And I would suggest that, and weight, well, I would suggest that of the two discrepancies that were apparent on the warrant, which is height and weight, I would agree with Your Honor that the difference in height was a material difference. I would disagree that the difference in weight was a material difference. People can gain weight, but they don't gain a foot in height. Right, exactly, exactly. And especially, you know, men as they, there was an 18-year gap between the issuance of the warrant and the arrest of the plaintiff, and 32 years old versus 50 years old, men very often gain weight as they turn that age. Men don't grow a foot, so. But they don't grow a foot, right. I would suggest that the difference in height does not change the analysis for two reasons. First of all, the case law says so. Case after case after case has stood for the proposition, and we've cited a lot of these cases in our briefs, stood for the proposition that where there are many matches, many similarities between the suspect's description and the warrant description and one material. I mean, there are probably, you know, if you looked in a phone book, I don't know how many Mario Garcia's there would be in L.A., but probably hundreds, maybe thousands. Yeah, maybe. And there are paradigms for how many of those people have the same birth center, a lot. Yeah. I'm not sure that there would be more Mario Garcia's with the same date of birth as there would be, you know, Santiago Rivera's with the same date of birth. And in Rivera, this court held that there was no duty to respond. Yeah, but in that instance, there was a minuscule height difference. It could easily be a mistake. That's not at all the same thing. I mean, there's just no chance that, I mean, that this could be the same guy. Well, there certainly is, and for two Well, I think that the difference in height could be attributable, first of all, to a typographical error. 501 versus 510 could be attributable to a typographical error. And also the case law stands for the proposition that in the face of many similarities, one material difference, which is what we have here, one material difference does not transform a reasonable arrest. A completely dispositive one. I mean, people have used different names and they gain weight, but they don't grow a foot. Well, people don't, people also don't change races. And there are cases like Johnson v. Miller, Robinson. That could be misperceived, but they don't grow a foot. I mean, in other words, if you look at somebody, there's not, it's not clear necessarily whether they're African American or not, but they don't grow a foot. I'm with you on that. But there are, again, a number of cases where significant discrepancies in weight, in height. We had one case from last year, Gantt versus County of Los Angeles, where there was a seven inch difference in height and also a 140 pound difference in weight. So two material discrepancies. But there are cases, one case from this court is Reed v. Baca, where there was a difference in CII number. The plaintiff's CII number did not match the CII number on the warrant. And if you read the plaintiff's complaint in this case, the plaintiff makes much about CII numbers and how much CII numbers matter and how dispositive they are in identifying somebody. Well, this court said in Reed v. Baca that because there were so many similarities between the plaintiff's description and the description on the warrant, despite that difference in CII number, there was no duty to respond to his complaints of mistaken identity. And again, case after case after case, from this circuit, from other circuits, the first, fifth, sixth, seventh, eleventh circuits holding, that even material differences such as race, extreme differences in height, differences in date of birth, one material difference will not transform a reasonable arrest into an unreasonable arrest. You're talking here, as I understand it, about the arrest. Is that right? We're talking about the detention. That's correct. That's correct. What about the allegation that LAPD had a practice of ignoring a detainee's CII number? L.A. Sheriff's Department, yes. Sorry, L.A. Sheriff's. Too many TV shows. Right. We're not really disputing that allegation in this appeal. For purposes of this appeal, we didn't challenge the Manel. Some of the argument that we've had today, and I reflect on the record and my question to you is, isn't this more appropriate for decision at a summary judgment stage than at the motion to dismiss stage? Well, a lot of the cases that we've cited and a lot of the cases that I've just recited to you here now were decided on a motion to dismiss, and they were appeals from either a grant of a motion to dismiss, and I think in a couple of cases, a qualified immunity appeal from a denial of a motion to dismiss. I don't think it would matter because there's really no dispute as we stand here now about the facts in the complaint. We accept the facts of the complaint as true for purposes of a motion to dismiss. We've not requested judicial notice of any facts that contradict anything that's in the complaint. I get that you're also not, I guess because we're dealing with a complaint, but I'm not sure why, contending that Baca in particular, in his individual capacity, couldn't have been expected to know this. Right. Right. Sheriff Baca, there's no allegation that Sheriff Baca was involved in the arrest that he knew about the plaintiff's detention. That's not what you're arguing to us, though. No. No. We're arguing that he's entitled to qualified immunity because there's no- You're willing to accept that he's responsible for whatever happened here? Well, the allegations- It could be right or it could be wrong, but you're not arguing that he, in particular, as opposed to someone further down the line, is responsible? We have to accept the allegations of the complaint as true, and the complaint includes allegations stating that he was responsible for, not necessarily responsible for the detention, but, or knew about the detention, but that he was responsible for policies that led to a constitutional violation, and so we accept those allegations as true, so that issue would, I think, be more appropriate for a motion for summary judgment, but the issue of whether or not the plaintiff experienced a 14th Amendment violation, I think, can be decided here at the pleading stage, and I, again, would point to all of these cases that we've cited, holding that one material difference does not transform a reasonable arrest into an unreasonable arrest, and I don't think the distinction- Judge Gould? Judge Gould? Yes. Does one difference, like the major height difference here, invoke a need for some heightened inquiry under the procedures, so that they'd make more inquiry than they did? Under the Sheriff's Department procedures, no, only because the descriptors don't matter with respect to the Sheriff's Department's procedures. If someone says, I'm the wrong guy, you have the wrong person, they're supposed to conduct an investigation regardless of what's on the warrant. I want to- We don't have any information here because of the stage of the case as to whether they did, and you would say it doesn't matter because it's a constitutional issue, isn't that right? Right. And the fact that they were supposed, as a matter of policy, said they were going to but didn't would not be pertinent? Not to this appeal, not to this appeal, because we're only challenging qualified immunity, saying that there's no constitutional violation, that there was no duty to investigate under the 14th Amendment. If I could reserve my remaining two minutes for rebuttal, thank you. Good morning, Your Honor. Donald Cook for Appalachian. Size matters. Gant v. County decided last year, this court, one of the plaintiffs, my client, Jose Ventura. His name's on the warrant, birthdate matches, male, Hispanic. Seven-inch difference in height in that case, and depending upon what piece of information you're looking at, anywhere from a 20-pound to a 120-pound difference in weight. This court holds that that stated a due process violation- I'm just told they held the opposite. I know. He's incorrect. Gant held that Ventura had a due process, stated a due process violation against the Sheriff's Department based on the fact that he complained he was not the correct person, there was the seven-inch difference in height, and again, depending upon which piece of documentation you look at, anywhere from a 20-pound to a 120-pound difference in weight. That's sufficient, and that's Gant. I'll submit a Rule 26 letter- Was there also a qualified immunity ruling in that case? It was not a qualified immunity ruling in that case. The due process claim had been thrown out by the trial court on summary judgment, and this court vacated. So, as I say, size matters. Now, the easiest thing for someone unfamiliar with these systems to focus on in this case is the obvious difference in height, the nine inches, as well as the 40-pound difference in weight. Very much like the Farrelly case, which also happens to be one of my cases. I seem to have a lot of these. Joe Farrelly, John Farrelly, twins, same birth date, same ethnicity, 66-pound difference in weight, due process violation, in any held liable, have to have procedures in place. This complaint alleges that from the face of the warrant, there were material discrepancies between what the warrant says and the body you had in front of you. If you want to go a little bit further, and this is where you have to look at the complaint allegations and keep in mind the people who are in this system, the jail, the jailers, law enforcement, they know a few things that the rest of us don't know. For example, they look at this warrant, the face of it, and they know that the subject, besides the difference in physical descriptors, has a felony conviction for the possession for sale, you know that from the charges, the probation violation. And they also know he was in the county jail. And they also know, as alleged in the complaint, that if you hit a few buttons on the keyboard, you'll have the criminal history for my client, Mario Alberto Garcia, and he's never been convicted of a felony. He's got a DUI and Van Nuys some years ago. Well, that's a little circular, right? What? It's a little circular in the sense that it depends who they think he is. Well, I'm just... If they think he's the other guy, then they're not going to push that button. That's correct. I'm just saying, you know, do you have to do something when a judge... But what I'm trying to understand is if they believe that he is that person, otherwise, I understand there's a height problem, but if they otherwise believe he is that person, then why would they be going to find out what... If they had pushed the button for that person, they would have come up with the felony conviction. Yeah. Well, I start from a little different premise from you. They don't really care if he's a person or not. That's what the complaint allegation is. But if they thought he was, in fact, the true subject, then you're absolutely correct. They wouldn't do anything then what they did here. They just processed the paperwork and book him. But if there was something material that should have triggered some further inquiry, the LASD could have within, what, a minute determined whether there was a fingerprint match and then obtained a criminal history? Of course. I mean, again, I know we're at the pleading stage and much of this is in the complaint, but bad guy Garcia was in the county jail, fingerprinted, CII number. All this information is part and parcel of their information system. It's right there in the system. They bring in my client. They're using the same system. It's the same system the courts use. It's the same system they use to generate data for the electronic warrants. So as soon as you start hitting a few keys, in seconds, you've got information about, oh, here's the bad guy. I gather what your opponent would say about this is that under Baker and Rivera, they don't have to do that. I understand he is standing on top of a lot of somewhat internally contradictory law, some of which it does seem to say they don't need to do it. My response, and I'll take Rivera because Rivera is the last, I would say, best case for him on this point. Rivera was my case too. Anyway, Santiago Rivera, by the way, born July 25th, that's why he's named Santiago. Patron saint of Spain, Saint James. Male Hispanic born on that day is going to be Santiago. Santiago Rivera, first last name match, birth date match, and then the height and weight was very close, 1 inch, 10 pounds. Judge O'Scanlan said there's nothing in the official documentation here that suggests that this was the wrong person, but if there's some material discrepancy, then they have a duty to do something more. What distinguishes my case here from Rivera is the same factor that also allowed Mr. Ventura in the Gantt case to prevail, which is you had a material difference. Now, the other factor... Material difference being the height? Well, I think both the height is a material difference for the reasons already noted. Yeah, more than one, because your opponent talks about a material mis... You had, you actually had the height, you had the weight, plus, and again, this is the specialized knowledge of the people running the system, what they know from looking at the face of the warrant. The bad guy they want, they know has a felony conviction, and they know, if they have any doubts, if the body they have in front of them is the guy on this warrant, look at this warrant, say, well, all we have to do is see if this guy in front of us has this felony conviction that this warrant says he has. Hit a couple of keys, pops up on the screen. This guy we have in front of us, per his fingerprints, has no felony conviction at all, any time. So that's how they resolve it if they use their information system. But I know they don't get to that point unless they have some reason to check. That's what Rivera says. You have to have a reason to check. Rivera didn't have a reason to check. Mr. Garcia's factors showed a reason to check. And you look at the ease with which their systems can give them the answer, that's another factor. And, again, this is alleged in the complaint. Basically, it's very, very easy to figure this out. It's just that the Sheriff's Department has to complain the ledges. Somebody brings in a body that says it's the subject of a warrant, and the Sheriff's Department says, we book them, we don't care, we just book them. We rely on what the outside agency says. We ignore the differences that may appear on the face of the warrant. We just book them. That's what the complaint alleges. My vague recollection is that there has a forward-looking systemic case against Los Angeles over these policies. A what type of case? A forward-looking systemic case over these policies. Well, they're all my cases that I've been alleged. No, but has there been an injunctive future-oriented case looking to deal with the systems? I mean, it is interesting that most of these cases seem to be Los Angeles, so there's something going wrong here. Yeah, I mean, there's a lot I could say in response to that. First of all, there is no case. Is there a case? There is no case, final judgment case, addressing allegations of systematic failures that require some type of injunctive relief. I have brought such cases, alleging injunctions, seeking, this is one of them actually, I have never gotten to the stage where the injunctive relief claim has been adjudicated. Some cases have gotten dismissed, others have been settled. But it is a very serious issue. I mean, LA County jail, largest jail population in any municipal jail in the world, if you believe what they say, which I think is probably accurate. There's, we know the problem with common names, particularly when it comes to Hispanics, and sometimes it's mistakes. But in cases like this, where you have the opportunity to make sure that you've got the right body in the jail, it's just a matter of using your, our allegations are you must use your existing systems to deal with something where you've got an obvious material discrepancy or two on the face of the warrant. Does an officer have an obligation if it's a common name to do something more than if it's an uncommon name? Well, if that's all you have on a warrant is a common name, let's say it's part of, you've pointed it out here perhaps, that in addition to what you've discussed, it was a common name. I think if an officer had somebody in the field, had my client in the field, and he saw the discrepancy on the height, he doesn't have access to resources usually in the field that they do at the station. I think at that point, maybe the officer's best to take him to the station. He can call the station and say, hey, run the, take a minute. They can do that too. I don't have, in this case, doesn't contend we have a problem with the arresting officers. I know there are limitations to what arresting officers in the field can do. In here, we've got someone at the county jail, and again, I know this is the complaint stage. This case gets to summary judgment. We'll have the evidence to show that the county jail, at the press of a few keys, had all the information right there in seconds that told him the guy on this warrant is Mario Loya Garcia. What was, does the warrant have the middle name? Warrant does not have the middle name on it. The county systems had the middle name in it, but the warrant only had Mario Garcia. The sheriff's department had the institutional knowledge that the fingerprints didn't match. That's alleged in the complaint. I say institutional because, again, we know that the bad guy Garcia had been in the sheriff's department before, and therefore he'd been fingerprinted, and they had his record, and it's available in the systems. This is how they index all their records. They can't rely on names. The proxy for fingerprints in these computer systems is a CII number. So the argument that Sheriff Baca has qualified immunity because the law is not, say, clearly established, wait a minute, go back to Fairley. That's the case that says you have to have procedures in place to deal with instances where you have reasons to think that maybe you've got the wrong guy. And that's been the law since, I think, 2002. And then, of course, there's Lee v. City. As I say, Rivera doesn't help them here because of the material discrepancies. And you go to Grant, not Grant, Gantt v. County, my client Jose Ventura, and you see an illustration of that. The state law immunities basically fail because key to all the state law immunities is does the jailer know or should he have known? Think of it as a negligence standard, basically. That's the test. If the jailer knew or should have known, you don't get immunity under state law false But you don't have any doubt that, in terms of the jurisdictional question, that issue and the Baca immunity issue are properly before us. Well, I say the only appeal that's properly before the court is the Baca qualified immunity appeal. Why is that? Well, because the entity cannot appeal a denial of summary. The entity can't, but I'm asking about the state law. Well, if this case were in DMER, and the DMER is overruled, the DMER is the state equivalent of 12b6 motion. So I don't really understand why the state law immunities wouldn't be subject to the same procedural jurisdictional rules as the individual liability 1983 case. Sure. In state court, you cannot appeal. I know, but we in order to appeal on a collateral order doctrine theory, which has been the argument here, it has to be a matter of some significant importance. And I would say that because the state itself doesn't consider these kinds of rulings to be subject to immediate appeal, that's a factor for this court to look at and say, well, the state doesn't think it's important enough. Any case law in this? No, I've not seen it. I mean, this issue of the entity appealing collateral orders... We're talking about the entity. Let's cut the entity off the table. All right. Well, the state law claims are only against the entity. Is that right? That's correct. They're not against Baca? They're not against Baca. So I don't need Baca for the Your time is up. Well, I've got 30 seconds. I'll save it for the next argument. You are 30 seconds in the red. Oh, I'm sorry. Just a few quick points in response, Your Honors. First of all, counsel is correct. I misspoke about Gantt. But let me just address Gantt because it was raised. Really not good. Here's the difference with Gantt in this case. This case, as we've said, involves one material difference between the warrant subject and the warrant description, between the suspect in custody and the warrant description. Gantt involved two material discrepancies and one immaterial discrepancy. It was a seven-inch difference in height, a 140-pound difference in weight, and also a difference in address. And I would agree that the address is not as material, but a 140-pound difference in weight is significant. You had two material discrepancies, whereas here you only have one. And the case law says one is not enough. I mean, it seems to me that weight either is or isn't. I mean, this was a significant amount of weight difference. He could have gained the weight. That guy could have gained the weight, too. I would submit that it is less likely that someone would gain 140 pounds than that one would gain 40 pounds. Was Gantt decided before or after this case? Excuse me? Was Gantt decided before or after the incidents in this case? After. It was decided after. I also want to point out, too, that the Gantt court did not decide that those two material differences were sufficient to trigger a duty to investigate under the 14th Amendment. The decisions in Gantt were based on different issues. Summary judgment was reversed as to the county on the ground of whether or not he complained and as to the what is necessary to establish a 14th Amendment violation and the degree of differences that are necessary. The Gantt court gave us two examples, Fairleavey-Lemon and Cannon v. City of Macon County, as examples of situations where the standard would be satisfied. Those are extreme, extreme cases in which there was absolutely no reason for law enforcement to warrant subjects. I think we can take something from that. With that, I have 19 seconds left, apparently. Thank you very much. The case of Garcia v. County of Los Angeles is submitted.
judges: Gould, Berzon, Zouhary